Christopher A. Seeger
David R. Buchanan
SEEGER WEISS LLP
550 Broad Street, Ste. 920
Newark, NJ 07102
Tel.: (973) 639-9100
Fax: (973) 639-9393
E-mail: cseeger@seegerweiss.com
E-mail: dbuchanan@seegerweiss.com

Jennifer R. Scullion
Christopher Ayers
SEEGER WEISS LLP
77 Water Street
New York, New York 10005
Tel:  (212) 584-0700
Fax:  (212) 584-0799

James E. Cecchi
Michael A. Innes
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, PC
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Andrea Friedman and Russell Acosta, individually and on behalf of all others,  )<br><br>                                                      )<br>                                 Plaintiffs,   )<br>                                                      )<br>                     v.                            )<br>                                                      )<br>EQUIFAX, INC. and EQUIFAX INFORMATION )<br>SERVICES LLC,                             )<br>                                                      )<br>                                 Defendants.  )<br>                                                      )<br>_____  ) | Index No.  1:17-cv-7022<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Andrea Friedman and Russell Acosta ("Plaintiffs"), on behalf of themselves and all others similarly situated, on personal knowledge as to the facts concerning themselves, and on information and belief as to all other matters, and based on the investigation of counsel and public statements, brings this class action against Equifax, Inc. and Equifax Information Services LLC (collectively, "Equifax" or "Defendants") pursuant to federal and state laws and allege as follows:

## NATURE OF ACTION

1.     On September 7, 2017, Equifax publicly disclosed a massive data security breach potentially impacting more than 140 million U.S. consumers---equivalent to about half of all U.S. adults---despite having knowledge of the breach as early as July 29, 2017.

2.     While Equifax has yet to come forth with a full and candid description of all facts known only to it concerning the unprecedented disclosure of millions of consumers' highly sensitive personal information, what Equifax has admitted is damning.

3.     Equifax admits that its U.S. website application had a security "vulnerability" that allowed third parties to access a vast amount of individual personal identifying information ("PII") from at least mid-May through July 2017. The PII accessed includes, at least, individual names, Social Security Numbers, birth dates, and addresses. In at least some instances, Equifax's system also afforded access to individual drivers' license numbers. Credit card numbers and other PII from dispute records were disclosed for at least approximately 180,000-200,000 consumers.

4.     None of the individuals whose PII was accessed authorized such access or disclosure by Equifax. Equifax itself claims that the data was accessed by, and therefore presumably is in the hands of, "criminals." Thus, all of the individuals whose PII was accessed now face massive risks of further injury from identity theft, credit and reputational harm, false

tax claims, extortion, and worse.

5.      While Equifax holds itself out as a sophisticated data and information company with "industry expertise" in handling "trusted unique data," including PII for individual consumers like Plaintiff, it has been sued, investigated, and fined multiple times in recent years for fundamental flaws in its systems that handle PII related to consumer credit.

6.      Equifax's irresponsible, "consumers-be-damned" approach to data security is such that, despite taking more than a month to establish a website for U.S. Consumers to consult, the website Equifax set up and directed consumers to use to check whether their PII had been compromised:

- Was itself fraught with security risks, including, but not limited to Equifax having a flawed Transport Layer Security implementation, and running on free blogging software unsuitable for secure applications;

- Purported to require consumers to provide Equifax with two key pieces of PII (last name and last six digits of Social Security number), without providing any assurance that that information itself would be secure;

- Failed to warn consumers whose PII already may have been compromised to use a secure computer or encrypted network to provide such sensitive PII;

- Was a sham that gave the same responses regardless of whether a consumer entered valid PII or fictional names and numbers;

- Required consumers to come back days later and enroll in an Equifax product (TrustedID) that would require consumer to provide Equifax with still more PII; and

- Required (shamelessly) that consumers waive various legal rights to access the

TrustedID product (a product that falls hopelessly short of correcting the massive, and irreparable harm, caused by the breach).

7.    What is more, Equifax admits it knew of the unauthorized access---and thus the hole in its system and exposure to consumers---at least as early as July 29.  Yet, despite the breadth and severity of the PII disclosures, Equifax did not issue any public notice until September 7, 2017---more than a month after the breach.

8.    Astonishingly, even as Equifax failed to protect Plaintiffs and tens of millions of other consumers, at least three Equifax executives---including Equifax's CFO---protected themselves by dumping substantial holdings of Equifax stock within days of Equifax learning of the breach, but more than a month before Equifax told Plaintiff and the rest of the public.

9.    Equifax's actions and omissions violate well established legal and statutory duties it owed to Plaintiffs and all other similarly situated U.S. consumers, including under the Fair Credit Reporting Act.

10.    Plaintiffs brings this class action on behalf of themselves and all similarly situated consumers for actual and statutory damages of not less than approximately $14 billion, as well as punitive damages and equitable relief to fully redress the vast harm Equifax's wrongful acts have unleased on U.S. consumers.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as well as jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendants.

12.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d),

because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

13.     This Court has personal jurisdiction because Defendants do business in this District and a substantial part of the events and injury giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

### Plaintiffs

14.     Plaintiff Andrea Friedman ("Friedman") is a citizen of New Jersey.  Her PII was stored by Equifax and, according to Equifax, may have been compromised in the data breach. As a result of the data breach, Friedman has already had to expend time and resources addressing the resulting risks to her PII, credit, and finances.

15.     Plaintiff Russell Acosta ("Acosta") is a citizen of California.  His PII was stored by Equifax, according to Equifax, and may have been compromised in the data breach.  As a result of the data breach, Acosta has already had to expend time and resources addressing the resulting risks to his PII, credit, and finances.

### Defendants

16.     Equifax Inc. is a global consumer credit reporting agency incorporated in Georgia and with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia.

17.     Equifax Information Services LLC operates as a subsidiary of Equifax Inc. which collects and reports consumer information to financial institutions.  Equifax Information Services LLC is incorporated in Georgia and with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia.

18.     Defendants do business nationwide, including in this District and in California.

### FACTUAL ALLEGATIONS

19.     Equifax generates billions of dollars in revenue each year collecting, using, and

reporting on consumer PII.  As a purported leader in the consumer credit data industry---and one that sells numerous products allegedly designed to respond to identify theft and credit fraud---Equifax knows the critical importance of protecting PII from unauthorized access.  Equifax also knows the multitude of harms that foreseeably flow to individual consumers when PII is stolen by criminals, including identity theft, fraud, credit and reputational harm, erroneous tax claims, extortion, etc.

20.     Neither Plaintiff, nor any of the other class members are compensated for this use of their PII, nor can they control what PII Equifax collects or how it is stored.  Plaintiffs and the Classes are at the mercy of Equifax to properly safeguard their PII.  Equifax is entrusted with the PII and with its security.  As such, Equifax owes Plaintiffs and the Classes a duty to use reasonable care to protect their PII from authorized access.  Indeed, Equifax represents to the public, through its published privacy policies, that it purportedly takes steps "to protect the privacy and confidentiality of personal information about consumers," and that "[s]afeguarding the privacy and security of information, both online and offline, is a top priority for Equifax." As detailed below, Equifax also owes statutory duties to safeguard PII and to promptly report and redress data breaches.

21.     Equifax unreasonably and negligently failed to take appropriate steps to store and secure Plaintiffs' and the Classes' PII.

22.     Equifax admits that the data breach here resulted from a security "vulnerability"---i.e., failure---in its U.S. website application and that that failure allowed unauthorized access to an entire collection of multiple pieces of non-aggregated PII, allowing a thief to grab the cyber equivalent of someone's entire wallet.  Or, in this case, the cyber wallets of tens of millions of people.

23.     Equifax's technical and security systems were so flawed that Equifax failed to detect the unauthorized access to such core, sensitive information for more than a month.

24.     Even after Equifax learned of the data breach, it unreasonably delayed disclosing the fact of the breach for more than a month, thereby increasing the exposure, risks, and injury to Plaintiffs and the Classes.  During this delay and before the breach was made public, several senior Equifax executives (including CFO John Gamble) sold nearly $2 million worth of Equifax shares in transactions that were not pre-planned.  By withholding the facts concerning the unprecedented breach of PII, Equifax put its own interests ahead of the very consumers who placed their trust and confident in Equifax to protect their PII and benefitted itself to the detriment of Plaintiffs and the Classes.

25.     Since announcing the breach, Equifax has further breached its legal and other duties by failing to provide complete and accurate information about the scope of the breach, seeking to place unreasonable conditions on Plaintiffs and others similarly seeking further information about the status of their PII, and demanding additional PII from consumers.

26.     As a direct and proximate result of Equifax's actions and omissions, Plaintiffs and similarly situated consumers have been harmed, injured, and damaged.  Plaintiffs and members of the Classes have been injured through unauthorized use of their PII and through violations of statutes such as the federal Fair Credit Reporting Act ("FCRA") and Graham-Leach-Biley Act ("GLBA") that recognize the inherent harm in such unauthorized access to and use of PII, as well as the multitude of harms that are likely to follow from such access and use.  Consumers like Plaintiffs already have had to spend time and resources trying to redress the effects of the breach, including investigating the extent to which their PII has been compromised and putting in place credit monitoring and credit freezes to try to minimize the risks to which they have been

exposed.  These harms were reasonably foreseeable to Equifax.

## CLASS ALLEGATIONS

27.     Plaintiffs bring all claims as class claims under Rules 23(a), (b)(2), and (b)(3) of

the Federal Rules of Civil Procedure.

28.     Plaintiffs bring their FCRA, negligence, and negligence per se claims on behalf of

a proposed nationwide class ("**National Class**"), defined as follows:

> All United States residents whose personally identifiable information
> ("PII") was accessed without authorization in the data breach
> Equifax announced on September 7, 2017.

29.     Plaintiff Friedman also brings her claims under New Jersey consumer and data

protection statutes on behalf of a proposed statewide subclass ("**New Jersey Subclass**"), defined

as follows:

> All New Jersey residents whose personally identifiable information
> ("PII") was accessed without authorization in the data breach
> Equifax announced on September 7, 2017.

30.     Plaintiff Friedman also brings her negligence and negligence per se claims on

behalf of the New Jersey Subclass as an alternative to the National Class.

31.     Plaintiff Acosta also brings his claims under California consumer and data

protection statutes on behalf of a proposed statewide subclass ("**California Subclass**"), defined

as follows:

> All California residents whose personally identifiable information
> ("PII") was accessed without authorization in the data breach
> Equifax announced on September 7, 2017.

32.     Plaintiff Acosta also brings his negligence and negligence per se claims on behalf

of the California Subclass as an alternative to the National Class.

33.     The National Class, the New Jersey Subclass, and the California Subclass are

referred to, collectively, as the Classes.

34.     Excluded from the Classes are: the Defendants; any of their corporate affiliates; any of their directors, officers, or employees; any persons who timely elects to be excluded from any of the Classes; any government entities; and any judge to whom this case is assigned and their immediate family and court staff.

35.     Plaintiffs do not know the exact number of members in the Classes, but believe that there are millions of members.

36.     Common questions of law and fact exist as to all members of the Classes and, as appropriate, the members of each Subclass.  The data breach was generally applicable to all the members of the Classes and arose from a common set of acts and omissions by Equifax without regard to the nature or identity of individual class members, thereby making appropriate relief with respect to the Classes as a whole.

37.     The questions of law and fact common to the Classes include:

(a)     Whether Equifax owed a duty to the Class members under federal or state law to protect the PII, provide timely notice of the unauthorized access, provide timely and accurate information as to the extent of the compromised PII, and provide meaningful and fair redress;

(b)     Whether Equifax breached such duty;

(c)     Whether Equifax's breach provided the means for the data breach;

(d)     Whether Equifax was negligent in failing to design, employment, and maintain adequate security systems and protocols;

(e)     Whether Equifax's negligence provided the means for the data breach;

(f)     Whether Equifax knew or reasonably should have known of the vulnerabilities in its systems that allowed for the unauthorized access;

(g)     Whether Equifax willfully failed to design, employ, and maintain a system adequate to protect the PII at issue;

(h)     Whether representations Equifax made about its systems security were false or misleading;

(i)     Whether Equifax's actions and omissions violated applicable state consumer protection laws

(j)     Whether Equifax's actions and omissions were the proximate cause of the data breach and the resulting injuries to Plaintiffs and the Classes;

(k)     Whether Plaintiffs and the Classes were injured as a result of the unauthorized access of their PII;

(l)     Whether injuries to Plaintiffs and the Classes were exacerbated by Equifax's failure to provide timely and accurate notice of the breach and impact on PII; and

(m)     The appropriate injunctive and related equitable relief for the Classes; and

(n)     The appropriate class-wide measure of damages for the Classes.

38.     Plaintiffs' claims are typical of the claims of the members of the Classes (and their respective Subclasses), and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Equifax's wrongful conduct in that their PII has been exposed to criminal third parties without their authorization.

39.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.

40.     Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.

41.     Plaintiffs are represented by counsel competent and experienced in the prosecution of consumer protection and tort litigation.

42.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

43.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense if numerous individual actions.  The benefits of proceeding as a class, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

44.     The prosecution of separate actions by individual members of the Classes is not feasible and would create a risk of inconsistent or varying adjudications.

## FIRST CLAIM FOR RELIEF

### Violation of the Fair Credit Reporting Act ("FCRA")

45.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

46.     Plaintiffs and the members of the National Class are individual consumers within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

47.     The PII at issue was a "consumer report" within the meaning of the FCRA (15 U.S.C. § 1681a(d)) because the PII was a communication of information that bears on the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of Plaintiffs and the members of the National Class that was

expected to be used or collected to serve as a factor in establishing Plaintiffs' and class members' eligibility for credit.

48.     Equifax is a consumer reporting agency within the meaning of the FCRA (15 U.S.C. § 1681e(a)) because it regularly engages, for monetary fees, in assembling and evaluating consumer credit information and other consumer information for the purpose of furnishing consumer reports to third parties, such as banks, cell phone carriers, and other lenders and retailers.

49.     Under the FCRA, Equifax was required to maintain reasonable procedures that are designed to limit the furnishing of consumer reports to six circumstances ("purposes") identified at 15 U.S.C. § 1681b.

50.     Equifax violated the FCRA by furnishing the PII consumer reports to the unauthorized individuals or entities that accessed the PII through the Equifax website because furnishing consumer reports in such circumstances is not one of permitted the "purposes" under the FCRA.  In addition, Equifax failed to maintain reasonable technological or other procedures designed to prevent such impermissible furnishing of consumer reports.

51.     In view of Equifax's knowledge, experience, and expertise in consumer data security, prior failures in its systems, and the fact that the breach here was so vast, affected such core consumer information, and went on for so long without detection, it also is clear that Equifax acted willfully or recklessly in its failure to safeguard the PII at issue here.

52.     Equifax's willful and/or reckless violations of the FCRA provided the means for third parties to access, obtain, and misuse the PII of Plaintiffs and the Class Members without authorization and for purposes not permitted by the FCRA.

53.     Equifax's violation of its duties under the FCRA constitutes a de facto injury to

Plaintiffs and the National Class members.  In addition, Equifax's violation of the FCRA has direct and proximately injured Plaintiffs and members of the National Class, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of criminals obtaining the PII.

54.     Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Plaintiffs and each of the National Class Members is entitled to recover actual damages, or statutory damages of not less than $100 and nor more than $1,000 per affected consumer.

**SECOND CLAIM FOR RELIEF**

**Negligence**

55.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

56.     Equifax owed Plaintiffs and the members of the Classes a duty of care commensurate with the sensitive nature of the PII with which it was entrusted (particularly when aggregated and digitized).  Equifax created this duty through its voluntary actions in collecting and storing the PII for its own benefit, as well as by its assurances (in its Privacy Policy and elsewhere) that it would safeguard that information.  In addition, given the nature of the information at issue and the means by which Equifax acquires it (i.e., from banks, lenders, retailers, and others with which consumers deal directly), the relationship between consumers and Equifax is sufficiently close and akin to privity to give rise to a duty to the consumers.

57.     Equifax's duty required it, among other things, to design and employ cyber-security systems, anti-hacking technologies, and intrusion detection and reporting systems

sufficient to protect the PII from unauthorized access and to promptly alert Equifax to any such access and enable it to determine the extent of any compromised PII.

58.     Had Equifax designed, employed, and maintained appropriate technological and other systems, the PII would not have been compromised or, at a minimum, Equifax would have known of the unauthorized access sooner and would be able to accurately inform Plaintiffs and the other class members of the extent to which their PII has been compromised.

59.     Equifax breached its duties of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, to minimize the PII that any intrusion could compromise (i.e., less aggregation and weeding out unnecessary and stale data), and to promptly notify Equifax of a breach and enable Equifax to determine the extent of the PII that had been compromised so that, among other things, Equifax could timely notice affected consumers with accurate information to begin minimizing the impact of the incident.

60.     Equifax's breach of its duties provided the means for third parties to access, obtain, and misuse the PII of Plaintiffs and the class members without authorization.  It was reasonably foreseeable that such breaches would expose the PII to criminals and other unauthorized access.

61.     Equifax's breach of its duties has directly and proximately injured Plaintiffs and members of the Classes, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

62.     Plaintiffs and the members of the Classes are entitled to damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

#### Negligence Per Se

63.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

64.     As alleged above, Equifax violated duties owed under the FCRA.

65.     Equifax also violated the Graham-Leach-Biley Act ("GLBA"), 15 U.S.C. § 6801(b), because, among other things, Equifax failed to maintain and follow a written information security protocol with "administrative, technical, and physical safeguards" commensurate with the "size and complexity" of its business, the "nature and scope" of its activities, and, importantly, "the sensitivity of [the] consumer information at issue." 16 C.F.R. § 314.4.

66.     Equifax's violations of the FCRA and/or the GLBA constitute negligence *per se*.

67.     Plaintiffs and the members of the Classes were foreseeable victims of Equifax's violations of its statutory and regulatory duties.  The GLBA, for example, was enacted "to insure the security and confidentiality of customer records and information," "to protect against any anticipated threats or hazards to the security or integrity of such records," and "to protect against unauthorized access to or use of such records or information which could results in substantial harm or inconvenience to any customer."  15 U.S.C. § 6801(b).

68.     Equifax's breach of its duties provided the means for third parties to access, obtain, and misuse the PII of Plaintiffs and the Classes without authorization.  It was reasonably foreseeable that such breaches would expose the PII to criminals and other unauthorized access.

69.     Equifax's breach of its duties has direct and proximately injured Plaintiffs and the

Classes, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

70.     Plaintiffs and the Classes are entitled to damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Violation of the New Jersey
### Consumer Fraud Act

71.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

72.     Equifax, while operating in New Jersey, engaged, in unconscionable commercial practices, deception, misrepresentation, and the knowing concealment, suppression, and omission of material facts with intent that others rely on such concealment, suppression, and omission, in connection with the sale and advertisement of services, in violation of N.J. Stat. Ann. § 56:8-2.  This includes:

    a. Collecting, storing, and using vast quantities of highly sensitive PII concerning consumers in on-line, aggregated form over which the consumers themselves exercise no control and which Equifax failed to adequately protect from unauthorized and/or criminal access in violation of statutory and industry standards and its assurances to the public and to the entities that provide the PII to Equifax;

    b. Failing to employ technology and systems to promptly detect unauthorized access

to the PII with which it was entrusted;

c.  Unreasonably delaying giving notice to consumers after it became aware of unauthorized access to the PII;

d.  Knowingly and fraudulently failing to provide accurate, timely information to consumers about the extent to which their PII has been compromised;

e.  Knowingly and fraudulently placing unreasonable and unlawful terms and conditions on consumers obtaining information about the extent to which their PII has been compromised;

f.  Knowingly and fraudulently misleading consumers to waive their legal rights in order to obtain information about the extent to which their PII has been compromised; and

g.  Knowingly and fraudulently coercing consumers into enrolling in an Equifax product to redress their injuries.

73.     Equifax's breach of its duties has directly and proximately caused Plaintiff Friedman and the New Jersey Subclass to suffer an ascertainable loss of money and property, including the loss of their PII, and foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

74.     The above unlawful and deceptive acts and practices and acts by Equifax were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiff Friedman and the New Jersey Subclass that they could not reasonably avoid.  This

substantial injury outweighed any benefits to consumers or to competition.

75.     Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff Friedman and the New Jersey Subclass' PII and that risk of a data breach or theft was highly likely.  Equifax's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

76.     Plaintiff Friedman and the New Jersey Subclass seek relief under N.J. Stat. Ann. § 56:8-19, including, but not limited to, injunctive relief, other equitable actual damages (to be proven at trial), treble damages, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### Violation of New Jersey Customer Security
### Breach Disclosure Act

77.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

78.     Under N.J.S.A. § 56:8-163(b), "[a]ny business … that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers … of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person."

79.     Equifax is a business that compiles or maintains computerized records that include personal information on behalf of another business under N.J.S.A. § 56:8-163(b).

80.     Plaintiff Friedman and the New Jersey Subclass members' PII (including but not limited to names, addresses, and social security numbers) includes personal information covered under N.J.S.A. §§ 56:8-163, et seq.

81.     Because Equifax discovered a breach of its security system in which personal

information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured, Equifax had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated under N.J.S.A. §§ 56:8-163, et seq.

82.     By failing to disclose the Data Breach in a timely and accurate manner, Equifax violated N.J.S.A. § 56:8-163(b).

83.     As a direct and proximate result of Equifax's violations of N.J.S.A. § 56:8-163(b), Plaintiff Friedman and the New Jersey Subclass members suffered the damages described above.

84.     Plaintiff Friedman and the New Jersey Subclass members seek relief under N.J.S.A. 56:8-19, including but not limited to treble damages (to be proven at trial), attorneys fees and costs, and injunctive relief.

## SIXTH CLAIM FOR RELIEF

### Violation of California Business & Professions Code § 17200, *et seq*

85.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

86.     California Business and Professions Code Section 17200 prohibits any "unlawful, unfair or fraudulent act or practice . . . ."

87.     Equifax engaged in at least the following unfair or fraudulent acts or practices:

    a.   Collecting, storing, and using vast quantities of highly sensitive PII concerning consumers in on-line, aggregated form over which the consumers themselves exercise no control and which Equifax failed to adequately protect from unauthorized and/or criminal access in violation of statutory and industry standards and its assurances to the public and to the entities that provide the PII to Equifax;

    b.   Failing to employ technology and systems to promptly detect unauthorized

access to the PII with which it was entrusted;

c. Unreasonably delaying giving notice to consumers after it became aware of unauthorized access to the PII;

d. Knowingly and fraudulently failing to provide accurate, timely information to consumers about the extent to which their PII has been compromised;

e. Knowingly and fraudulently placing unreasonable and unlawful terms and conditions on consumers obtaining information about the extent to which their PII has been compromised;

f. Knowingly and fraudulently misleading consumers to waive their legal rights in order to obtain information about the extent to which their PII has been compromised; and

g. Knowingly and fraudulently coercing consumers into enrolling in an Equifax product to redress their injuries.

88.     Equifax's conduct is also "unlawful" within the meaning of Section 17200 because it violated federal and state consumer protection and anti-fraud law, including the FCRA and GBLA.

89.     The harm caused by Equifax's conduct outweighs its utility, offends public policy, is immoral, unscrupulous, unethical, oppressive, deceitful, and offensive, and has caused and will continue to cause substantial injury to consumers, including Plaintiff and members of the Class.

90.     Equifax had reasonably available alternatives to advance its legitimate business purposes, such as using state-of-the-art technology and business practices to prevent the

unauthorized access to the PII, detect intrusion, and provide consumers with prompt, accurate, and fair notice of compromise to their PII and redress.

91.    Equifax's breach of its duties has direct and proximately injured Plaintiff Acosta and California Subclass, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

92.    Plaintiff Acosta and the California Subclass members seek relief under Section 17200, including damages (to be proven at trial), attorneys' fees and costs, and injunctive relief.

## SEVENTH CLAIM FOR RELIEF

### Violation of California Civil Code § 1798.80, *et seq.*

93.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

94.    The California Customer Records Act ("CCRA") (Cal. Civ. Code § 1798.80, *et seq*) ensures that "personal information about California residents is protected" by requiring any "business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

95.    Plaintiff Acosta and California Subclass are individuals protected by the CCRA.

96.    Equifax is subject to the CCRA because it "owns, licenses, or maintains personal information about [one or more] California resident[s]."

97.    Equifax violated the CCRA because it failed to "implement and maintain

reasonable security procedures and practices" to protect the PPI at issue from unauthorized access and, as a direct, proximate, and foreseeable result, the PPI of Plaintiff Acosta and California Subclass was compromised.

98.     Equifax further violated the CCRA by unreasonably delaying notification to Plaintiff Acosta and California Subclass of the data breach.

99.     Equifax's breach of its statutory obligations has directly and proximately injured Plaintiff Acosta and California Subclass, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (nor or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

100.    Plaintiff Acosta and California Subclass are entitled to damages in an amount to be proven at trial, as well as other appropriate legal and equitable relief, plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the alleged Classes, that the Court enter judgment in their favor and against Equifax as follows:

A.  An Order certifying each of the proposed Classes and appointing Plaintiffs and their Counsel to represent the Classes;

B.  An Order enjoining Equifax from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of Plaintiffs' and Classes' PII;

C.  An Order compelling Equifax to employ and maintain appropriate systems and policies to protect consumer PII and to promptly detect, and timely and accurately report, any

unauthorized access to that data;

D.  An award of compensatory, statutory, and punitive damages, in an amount to be

determined;

E.  An award of reasonable attorneys' fees costs and litigation expenses, as allowable by

law;

F.  Interest on all amounts awarded, as allowed by law; and

G.  Such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand, for themselves and each of the classes, a trial by jury, pursuant to the

Federal Rules of Civil Procedure, of all issues so triable.

DATE: September 12, 2017

Respectfully submitted,

SEEGER WEISS LLP

By:    */s/ Christopher A. Seeger*
      Christopher A. Seeger

Christopher A. Seeger
David R. Buchanan
SEEGER WEISS LLP
550 Broad Street, Ste. 920
Newark, NJ 07102
Tel.: 973-639-9100
Fax: 973-639-9393
E-mail: cseeger@seegerweiss.com
E-mail: dbuchanan@seegerweiss.com

Jennifer Scullion
Christopher Ayers
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005
Tel.: (212) 584-0700
Fax: (212) 584-0799
E-mail: jscullion@seegerweiss.com

E-mail:  cayers@seegerweiss.com
(*pro hac vice* applications forthcoming)

James E. Cecchi
Michael A. Innes
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, PC
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700
*Attorneys for Plaintiffs and
   the Proposed Classes*